**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SCOTT DYER,** | : | |
| **Petitioner** | : | |
| | : | **CIVIL ACTION NO. 1:03-0128** |
| **v.** | : | |
| | : | **(KANE, D.J.)** |
| **THOMAS LAVAN,** | : | **(MANNION, M.J.)** |
| **SUPERINTENDENT, SCI-** | | |
| **DALLAS AND ATTORNEY** | : | |
| **GENERAL OF PENNSYLVANIA,** | | |
| | : | |
| **Respondents** | | |
| | : | |

## <u>REPORT AND RECOMMENDATION</u>

The petitioner, an inmate at the State Correctional institution at Dallas, Pennsylvania ("SCI-Dallas"), filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C § 2254 on January 21, 2003. (Doc. No. 1). On April 4, 2003, the petitioner filed an amendment to the petition. (Doc. No. 5). A show cause Order ensued on April 29, 2003. (Doc. No. 8). On June 17, 2003, the petitioner filed a motion for default judgment, or in the alternative, a motion for summary judgment. (Doc. No. 12). By Order dated June 23, 2003, the respondents were directed to file a response to the amended petition on or before June 30, 2003. (Doc. No. 14).

After being granted an extension of time in which to do so, the respondents filed a response to the petition on July 28, 2003. (Doc. No. 15). On August 5, 2003, the respondents filed a supplement to the response, and also a response to the motion for default judgment. (Doc. Nos. 17, 18).  On

August 26, 2003, the respondents again filed a response to the petition, with a supplement. (Doc. No. 22, 23).   On August 27, 2003, an order issued denying the motion for default judgment.  (Doc. No. 26).  The petitioner filed a reply on October 10, 2003. (Doc. No. 28).   On July 15, 2004, the court ordered the respondents to file a brief in support of it's responses, and to comply with the local rules regarding the filing of pleadings. (Doc. No. 34). On August 5, 2004, the petitioner filed a motion for sanctions, which was denied by order dated August 9, 2004. (Doc. Nos. 37, 38).  After being granted an extension of time in which to do so, the respondents filed a brief in opposition to the petition on September 8, 2004, with a supporting appendix, ("Record").  (Doc. No. 39). The petitioner filed a reply brief on September 20, 2004. (Doc. No. 43).

The petitioner argues that he is entitled to habeas corpus relief for two reasons: (1) The sentence which he received is unconstitutional, and (2) Ineffective assistance of "Trial"[1] counsel. Specifically, the petitioner asserts that trial counsel was ineffective for three reasons: (1) For failing to investigate the petitioner's case and in failing to prepare for trial; (2) For failing to object to the sentence as being in violation of the petitioner's 14th Amendment due process rights, and (3) For failing to file a direct appeal of his sentence.

---

[1]The petitioner entered guilty and *nolo contendre* pleas.  As a result, there was no trial.

The respondents reply that the petition should be dismissed for three reasons: (1) The petition is untimely; (2) The petitioner did not exhaust state court remedies, and (3) The petitioner cannot state a cognizable ineffective assistance of counsel claim pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The petition will now be given preliminary consideration pursuant to Rule 4 of the Rules Governing Section 2254 cases, 28 U.S.C. foll. § 2254.

## I.   BACKGROUND

The procedural history in this matter is somewhat unusual.  The court has carefully reviewed the record and is satisfied that the procedural history as set forth by the Pennsylvania Superior Court in a Memorandum and Order dated January 3, 2001, is comprehensive and correct, as follows. (R. 270-268).[2]  On September 30, 1996, the petitioner entered a negotiated guilty plea to one count of escape and *nolo contendre* pleas to two counts of aggravated assault.  These charges arose from an incident in which the petitioner, along with three other inmates, escaped from the Adams County Prison.  Two prison guards were assaulted during the escape.  The petitioner and one co-defendant were apprehended in Texas.  The two remaining co-defendants were later apprehended in California.

---

[2]"R." refers to the appendix submitted by the respondents in support of the supplemental response and brief filed on September 8, 2004, (Doc. No. 39), unless otherwise indicated. For clarity the court paginated the Appendix, because the respondents failed to do so.

In accordance with the plea agreement accepted by the court, the petitioner was sentenced on September 30, 1996, to 10 to 20 years incarceration for these convictions.  The petitioner did not file post-sentence motions, or a direct appeal.  On April 18, 1997, the petitioner was transported to Kentucky to face bank robbery charges, a crime he and his fellow escapees committed during their flight from Pennsylvania.  The petitioner was returned to Pennsylvania on November 14, 1997. (R. 148).

On December 12, 1997, the petitioner filed a *pro se* Post Conviction Relief Act ("PCRA") petition in the trial court.  *See* 42 Pa. C.S.A. § 9541, *et seq.*  The petitioner raised the following claims in that petition: (1) The plea agreement was unlawfully induced; (2) Ineffective Assistance of counsel, and (3) Newly discovered evidence in the nature of his co-defendants' recantation statements.   Also, although not specifically raised in the petition, the petitioner argued that the arrest warrant used to take him into custody was forged. (R. 33).  On January 29, 1998, counsel was appointed to represent the petitioner in his PCRA proceedings.  On motion of the Commonwealth, a pre-hearing conference was scheduled for March 24, 1998.  It was discovered, however, that the petitioner was incarcerated in Maryland at that time.  As a result, the pre-hearing conference was continued.

By letter dated May 27, 1998, appointed PCRA counsel requested that he be permitted to withdraw as petitioner's counsel.  He also filed a No-Merit

statement pursuant to <u>Commonwealth v. Finley</u>[3] in which he expressed his professional opinion that the petitioner's claims as set forth in the *pro se* petition were without merit.  Specifically, counsel stated that, although at one point during the plea colloquy the petitioner did, in fact, tell the court that he felt that he was being forced to enter the plea, the totality of the circumstances demonstrated that the petitioner's plea was voluntarily, knowingly and intelligently entered. (R. 33-34).  As to the petitioner's claim that trial counsel was ineffective for failing to adequately investigate his case, PCRA counsel stated that the efforts trial counsel had made on the petitioner's behalf demonstrated that she had completely prepared for trial, and that she had properly advised the petitioner regarding the plea offer. (<u>Id</u>.).       As to the petitioner's "newly discovered evidence" claim involving the alleged recent recantation by the petitioner's co-defendants as to the petitioner's involvement in the planning of the escape, PCRA counsel opined that the record suggested that trial counsel had made repeated efforts to obtain the co-defendants' testimony, but was unsuccessful. He further noted that although the co-defendants did file written recantations, they did so only after they had all entered guilty pleas, and were housed together in the same prison. (R. 36).

Finally, PCRA counsel discussed the issue regarding the allegedly forged arrest warrant. PCRA counsel stated that trial counsel told the

_____

[3]550 A.2d 213, (Pa. Super. 1988).

5

petitioner that she would pursue the claim if the petitioner could point to any proof of the misconduct.   According to trial counsel, she also informed the petitioner that if actual proof was available, the matter would be addressed in a PCRA proceeding.  This claim was not raised by the petitioner in his *pro se* PCRA petition.   Nevertheless, PCRA counsel stated that he also could find no documentary evidence for the forgery claim. (R. 36-37).

On June 1, 1998, the trial court entered an order giving the petitioner 20 days to show cause why PCRA counsel should not be permitted to withdraw.  (R. 39).  By correspondence dated June 12, 1998, the petitioner informed the court of the reasons why he felt that his various claims had merit.  (R. 41-42).  By court order dated July 9, 1998, the court determined that PCRA's counsel's no merit letter was supported by the record. Nevertheless, the court also determined that the withdrawal request "should await the results of [the] PCRA action."  (R. 46).

Another pre-hearing conference took place on September 29, 1998. The petitioner appeared with PCRA counsel, and requested that the court permit PCRA counsel to withdraw, and that he be appointed new counsel. The court refused to do so.  The Commonwealth moved to have the PCRA petition dismissed as time-barred.  The court directed  the parties to file briefs on the issue. (R. 57-76).

PCRA counsel filed a brief on the petitioner's behalf in which he argued that the PCRA petition was not filed within the statutorily prescribed one-year

time limit because the petitioner had been incarcerated in Kentucky during the one year period, and as a result, he had no access to Pennsylvania law or the appropriate PCRA forms.   PCRA counsel also alleged that the petitioner learned of the alleged failure of trial counsel to interview the co-defendants only after his return to Pennsylvania from Kentucky on November 14, 1997.   Finally, PCRA counsel noted that the petitioner had filed the PCRA petition within one month of his return to Pennsylvania. (R. 78-79).

By order dated November 4, 1998, the court dismissed the PCRA petition as untimely.  (R. 90-96).   In an accompanying opinion, the PCRA court found that the petition was time-barred because the petitioner had failed to prove any exception to the timeliness requirements.  Specifically, the court stated that "[o]ther than asserting that he was in the custody of federal officials for a period of seven months, the [petitioner] has not supported his argument with allegation of fact...[A]lthough we are not persuaded that mere absence from the Commonwealth and incarceration elsewhere amounts to governmental interference, it is clear that the [petitioner] had plenty of time to proceed once returned to this jurisdiction." (R. 93).

With regard to the petitioner's newly discovered evidence claim, the PCRA court stated that "recantation testimony is generally viewed with suspicion as being unreliable, and we do not find the [petitioner's] general assertion establishes a likelihood of a different result (had the case gone to trial) or of innocence...[I]t is clear [petitioner] could have discovered the

evidence by proceeding to trial, but he chose not to do so.  The possibility of recantation does not lift the time bar to the PCRA petition." (R. 93).  The court advised the petitioner that he could either move to vacate the order within 10 days or he could file an appeal with the Pennsylvania Superior Court within 30 days of the date of the order. (R. 94).

On November 13, 1998, PCRA counsel filed a motion to vacate the court order dismissing the petition.  The petitioner asserted that factual errors were made with regard to the dates of his out-of-state incarcerations and when he returned to Pennsylvania.  The petitioner requested that the PCRA court allow him to "present his arguments to clarify his argument with regard to the times, dates and places of his incarceration." (R. 99).

By order dated December 22, 1998, the PCRA court scheduled an evidentiary hearing for February 22, 1999.  (R. 129-174).  The petitioner was the first to testify at the hearing.  He stated that trial counsel told him that two of his co-defendants would be testifying against him if he decided to go to trial, and that he would most likely be found guilty. He claimed that trial counsel told him that if he went to trial and was convicted, he would be facing an aggregate term of 60 to 100 years incarceration.  He further testified that at the time he agreed to the plea bargain, he had only recently received documents from the Commonwealth which he had not had sufficient time to review.  He stated that because of these factors, he "didn't think [he] had a chance." (R. 134).  He said that he had reluctantly agreed to the plea bargain

even though he believed that he was being forced to do something that he felt was wrong.

When the petitioner was asked if he had actually asked trial counsel if she had spoken to his co-defendants, the petitioner stated:

> ...[S]he said that they had refused to testify. [Co-defendant] Andrews, I am not sure.  I think she believed that his lawyer had told her that he had took a plea and signed it.  I believe she said she seen the plea.

> [Co-defendant] Abell, she didn't talk to [him] at all.  I think it was she asked his lawyer and his lawyer said that he would not testify for me, one...[Berlan] supposedly a phone call and that he refused to testify.  That's her exact words.  He refused to testify.

(R. 135).  The petitioner further stated that after he entered the plea he felt that "there were different stories about who was going to testify..." (Id.). Specifically, the petitioner claimed that he had run into co-defendants Abell and Andrews while he was in Kentucky, and that they told him that neither one of them would have testified against him.[4]

Finally, the petitioner testified that he was taken to Kentucky 4½ months after being sentenced, and that he filed the PCRA petition within 22 days of his return to Pennsylvania.  He claimed that while in Kentucky he had no access to Pennsylvania law or to PCRA forms.  (R. 136).

On cross examination, the petitioner reiterated his assertion that trial

---

[4]In the amendment to his habeas corpus petition, the petitioner annexed affidavits of co-defendants Andrews and Abell in which both stated that the petitioner was in no way involved in the plans to escape or in the bank robbery. (Doc. No. 5, Attachments).

counsel did not talk with the  co-defendants, or with the eye-witnesses to the assaults.  When asked who these eye-witnesses were, the petitioner replied, "[w]hoever was at the jail that time when [trial counsel] went over to visit other clients." (R. 140).  The petitioner also admitted that at the plea colloquy he told the judge that he was satisfied with the representation provided to him by trial counsel. (R. 141). He claimed that he made that statement only because he was just too disgusted with trial counsel because of her failure to prepare a defense.  (R. 141-142).

The attorney who represented co-defendant Berlan testified after the petitioner. He stated that trial counsel had contacted him and that he subsequently contacted his client, who was incarcerated in Kentucky at the time.  Counsel testified that Berlan would never have testified on behalf of the petitioner.  (R. 146).

The next witness who was called was the attorney who represented co-defendant Abell.  He refused to testify based on attorney-client privilege. (R. 149).

The final witness to testify was trial counsel.  (R. 146-162).  She stated that she called co-defendant Berlan who told her he would, in fact, testify on behalf of the petitioner, and that he would state that the petitioner was not involved in the planning of the escape.  She stated further that she prepared an appropriate motion to have Berlan transported to Gettysburg for the trial. Subsequently, however, trial counsel was contacted by Berlan's attorney who

told her that under no circumstances was Berlan going to testify on behalf of the petitioner.  He also told her that she was no longer permitted to speak with Berlan.  Given this turn of events, trial counsel withdrew the motion to have Berlan transported to Gettysburg for the trial.

Trial counsel next testified that she also talked to counsel for co-defendant Abell.  She said that he informed her that, at the time, Abell's plea agreement did not include a provision to testify against the petitioner, but if things changed, that Abell would testify against the petitioner.

Trial counsel further testified that she contacted co-defendant Andrew's counsel who informed her that Andrews had signed a plea agreement in which he agreed to testify against the petitioner.  She also stated that she had fully investigated the case and was prepared to go to trial, and that she had so informed the petitioner. She explained that, in fact, several prior plea agreements were proposed which she advised the petitioner to reject as they were not in his best interest. Finally, she testified that she had made arrangements to have eyewitnesses transported for the trial, and that she had advised the petitioner that all three co-defendants would most likely testify against him should he decide to go to trial.

On February 22, 1999, the PCRA petition was dismissed.  The order states in pertinent part:

> ...[T]he court finds that the defendant is not entitled relief under the PCRA Act.  He has not proven that his plea resulted from ineffectiveness of counsel.  In fact, it is quite apparent that defendant's plea was knowingly, intelligently and voluntarily

11

entered and that he was provided effective assistance by plea counsel...

...The defendant is notified that he has 30 days to appeal to Superior Court from this order.  He has the right to proceed *in forma pauperis* and with assigned counsel, who has already been appointed...

(R. 176). The petitioner filed a *pro se* appeal with the Superior Court, but not until July 8, 1999.  On July 22, 1999, PCRA counsel again filed a motion to withdraw as counsel, which was granted on August 10, 1999.  (R. 181-185, 203).

In his appeal to the Superior Court the petitioner raised the following issues: (1) The trial court erred in failing to advise the petitioner subsequent to the order of November 4, 1998, that he had 10 days to request vacation of the order, or alternatively 30 days to file an appeal in the Superior Court; (2)  The trial court erred in failing to direct PCRA counsel to file an amended PCRA petition; (3) The trial court erred in failing to direct the petitioner to file a concise statement of matters complained of with the Superior Court as part of his appeal; (4) The trial court violated the petitioner's due process rights in failing to issue an order containing findings of fact and conclusions of law setting forth the grounds upon which relief was denied, and (5) Ineffective assistance of both trial counsel and PCRA counsel. (R. 206-207). The Superior Court affirmed the PCRA court's decision on January 3, 2001.  The Superior Court agreed with the PCRA court that the PCRA petition was time-barred.  (R. 266-268).

The petitioner then filed a second PCRA petition ("Second PCRA petition") on September 13, 2001.  The petitioner claimed that the 10 to 20 year sentence imposed on September 30, 1996, was unlawful in that it was predicated on the "Two Strikes Law" which had been declared to be unconstitutional. He also argued that the Second PCRA petition should be deemed an extension of his first PCRA petition for purposes of calculating timeliness because of ineffective assistance of counsel.  The PCRA court dismissed the Second petition on October 23, 2001.  The court concluded that the Second PCRA petition was also time-barred. The petitioner filed an appeal of the decision in the Superior Court, which affirmed the dismissal of the Second PCRA petition as time-barred on August 5, 2002.  (R. 270-273). The petitioner claims that he filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied. (Doc. No. 2, p. 2).  This federal petition for writ of habeas corpus was filed on January 21, 2003. (Doc. No.1).

## II.   DISCUSSION

### A.   <u>The Petition for Writ of Habeas Corpus is Time-Barred</u>.

The respondents argue that the petition for writ of habeas corpus should be dismissed because it is untimely.   Under the Antiterrorism and Effective Death Penalty Act of 1996:

> A 1-year period of limitation shall apply to an application for
> a writ of habeas corpus by a person in custody pursuant to the

judgment of a State court. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the Constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2241 (d)(1). Based upon the foregoing, the petition for writ of habeas corpus is time-barred.  The judgment which underlies the petitioner's claims became final on February 2, 2001.[5] (RR. 266-268).  This petition was not filed until January 21, 2003, well beyond the 1-year period of limitations prescribed by 28 U.S.C. § 2241 (d)(1).

The petitioner argues that his petition is timely because he filed it within one year of the Superior Court's ruling of August 5, 2002, which affirmed the

---

[5]The Superior Court affirmed the dismissal of the first PCRA petition as time-barred on January 3, 2001.  The petitioner had 30 days from that date to file a petition for allowance of appeal with the Pennsylvania Supreme Court, which he did not do.  As a result, at the end of that 30 days, the judgment became final.  *See* Santo v. Gillis, 2004 WL 1102768 * 2 (E.D. Pa.)

PCRA court's dismissal of the Second PCRA petition as time-barred. The petitioner is essentially arguing that the 1-year limitation period should be tolled in his case due to the filing of the Second PCRA petition. The petitioner is incorrect in this assertion, as the Second PCRA petition was not a properly filed petition.

The 1-year limitation period may be tolled for the period in which a properly filed PCRA petition is pending in state court.  A properly filed petition is "one submitted according to the state's procedural requirements, such as the rules governing  the time and place of filing. " Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998).   If the petitioner files an out-of-time application and the state court dismisses it as time-barred, then it is not a "properly filed application" for tolling purposes. Meritt v. Blaine, 326 F.3d 157, 165-66 (3d Cir. 2003).  As indicated above, the Second PCRA petition was dismissed as time-barred by the PCRA court, and affirmed as such by the Pennsylvania Superior Court.  (R. 270).

Even if the court were to conclude that the petition was not time-barred pursuant to 28 U.S.C. § 2241 (d)(1), the petitioner would still not be entitled to relief because he has procedurally defaulted his state court claims, and has not demonstrated reason why the default should be excused.


**B.    The Petitioner did not Exhaust State Court Remedies.**

The petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254.

Section 2254(b)(1) requires that before bringing a petition under that section, the state prisoner must first exhaust available state remedies. In determining whether a state prisoner has preserved an issue for consideration in a federal habeas corpus petition, the court must determine not only whether the prisoner has exhausted his state remedies, but also whether he has "fairly presented" his claims to the state court. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)).  As a result, with only limited exceptions, federal courts will refrain from addressing the merits of any claim raised by a habeas petitioner that was not properly exhausted in state court. Coleman v. Thompson, 501 U.S. 722, 750 (1991).  "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights."  Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1997).  The burden rests upon the petitioner to establish that his claims have been exhausted in the state courts. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

Where state procedural rules bar a petitioner from seeking further relief in the state courts, "the exhaustion requirement is satisfied because there is an absence of available State corrective process,  28 U.S.C. § 2254(b)." McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)).  This does not mean, however, that the federal courts can, without more, determine the merits of the petition.  Instead, where claims are deemed exhausted

because of a state procedural bar, they are considered procedurally defaulted, and federal courts may not consider their merits unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." Id.  To the extent that the petitioner may now be procedurally barred from doing so, he must establish "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

In order to establish "cause", the Supreme Court has stated that a petitioner must "show that some objective factor, external to the defense, impeded counsel's efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478 (1986).  For instance, the Court noted that where a factual or legal basis for a claim was not reasonably available to counsel or where interference by government officials made compliance impracticable, "cause" for the procedural default would be established.  Id.

The petitioner has represented to this court that he filed two PCRA petitions in the trial court in which he raised the issues of unlawful inducement of plea agreement, ineffectiveness of counsel, and unconstitutional sentence.  Our review of the record indicates that the petitioner did raise the issues of unlawfully induced plea bargain and ineffectiveness of counsel in the First PCRA petition, but that he did not appeal the decision of the PCRA court which dismissed that petition.  As a result, the petitioner did not fairly present those claims in the state courts.  The petitioner also did not exhaust the issue of unconstitutional sentence, because he did not raise this issue

17

until the Second PCRA petition, and that petition was also dismissed as time-barred.

In his brief in support of the petition for habeas corpus the petitioner argues:

> ...In the instant case the petitioner will establish that this Honorable Court must review his case in spite of procedural default or lack of exhaustion because failure to do so will result in a fundamental miscarriage of justice and that it will result in the conviction of an innocent man in violation of due process...

(Doc. No. 2, p. 4).  The petitioner claims that both the PCRA court and the Superior Court erred in failing to conclude that the petitioner's PCRA petitions fit within one of several exceptions to the timeliness requirement. 42 Pa. C.S.A § 9545 (b) states in pertinent part:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
>
> (2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have

18

been presented...

42 Pa. C.S.A. § 9545(b).   Specifically, the petitioner claims that the exceptions which apply in his case are: (I) governmental interference; (ii) newly discovered evidence, and (iii) the right asserted is a Constitutional right that was recognized by the Pennsylvania Supreme Court, and held by that court to apply retroactively ("newly recognized constitutional right" exception).

As indicated above, the burden rests with the petitioner to establish that his claims have been exhausted in the state courts. Furthermore, timeliness issues implicate the jurisdiction of a Commonwealth court to entertain PCRA petitions, and the petitioner has the burden to prove an exception to the timeliness requirements.   Commonwealth v. Yarris, 557 PA. 12 (1999);  42 Pa. C.S.A. § 9541(b)(1).   The record on the whole demonstrates that the petitioner has not established that any of these three exceptions applies in his case.

The petitioner argues that because he was incarcerated in Kentucky for a period of time and allegedly was unable to access Pennsylvania law or PCRA forms, that this constitutes government interference.   This court agrees with the PCRA court, which stated:

> ...Other than asserting that he was in custody of federal officials for a period of seven months, defendant has not supported his argument with allegations of fact.  He, therefore, contends that incarceration in a foreign jurisdiction, without more, establishes the exception...Although we are not persuaded that the mere absence from the Commonwealth and incarceration elsewhere amounts to governmental interference, it is clear that

19

[the petitioner] had plenty of time to proceed once returned to this jurisdiction.

(R. 93). The record indicates that the petitioner was transferred to Kentucky on April 18, 1997, and returned to Pennsylvania on November 14, 1997. (R. 259). The petitioner was sentenced on September 30, 1996. He therefore had until October 1, 1997, to file the PCRA petition. The petitioner has put forth no reason why he did not file the first PCRA during the period September 30,1996 through April 18, 1997. Furthermore, lack of access to legal materials while incarcerated does not constitute government interference for purposes of the timeliness exception. Commonwealth v. Barrett, 761 A.2d 145 (Pa. Super. 2000). Thus, the petitioner cannot establish that the first PCRA petition falls within the government interference exception to the timeliness requirement.

Neither can the petitioner establish that the first PCRA petition falls within the newly discovered evidence exception. The petitioner alleges that the newly discovered evidence was the recantation statements made by his co-defendants to the effect that the petitioner was not involved in the planning of the escape, or in the bank robbery. This court agrees with the PCRA court that this information could have been discovered through the exercise of due diligence prior to the petitioner's removal to Kentucky on April 18, 1997. Furthermore, even if the information was not made available to the petitioner until he was returned to Pennsylvania in November 1997, the recantation

testimony does not, in and of itself, entitle the petitioner to habeas corpus relief.  As the United States Supreme Court noted in <u>Dobbert v. Wainwright</u>, 468 U.S. 1231, 1233-4 (1984), "[r]ecantation testimony is properly viewed with great suspicion.  It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction." [6]

Even more importantly, the issue as to whether the co-defendants would testify that the petitioner was not involved in the planning of the escape is of no moment in this particular case.  This is because the petitioner pled guilty to the escape charge and *nolo contendre* to the other charges.  Thus, no  trial took place, and no evidence was presented.   Even if a trial did take place, it is undisputed that the petitioner escaped from the Adams County prison.    Finally, as to the petitioner's claim that his PCRA petitions fit within the newly recognized constitution right exception, the petitioner also is not entitled to relief.  The petitioner claims that he was sentenced under the Pennsylvania "Two Strikes Law," 42 Pa. C.S.A. § 9714, which has been

---

[6]As to the affidavit of co-defendant Andrews to the effect that he would have testified that the petitioner was not involved the planning of the escape or the bank robbery, the court notes that trial counsel testified at the PCRA hearing that she was told by Andrew's counsel that Andrews had signed a plea agreement in which he agreed to testify <u>against</u> the petitioner.

declared unconstitutional. At the time of the petitioner's sentencing, section 9714 stated in pertinent part:

> a) Mandatory sentence.--
>
> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under Paragraph (2).

(42 Pa. C.S.A. 9714(a)(1)).

The Pennsylvania Supreme Court ruled in Commonwealth v. Butler, 563 Pa. 324, 329 (2000), that section 9714(a)(1) violates a defendant's due process rights by placing the burden on him to rebut the presumption that he is a high-risk dangerous offender.  The petitioner's argument in this regard must fail because he was not sentenced under section 9714(a)(1).  As the trial court stated, the petitioner was sentenced pursuant to the plea agreement, and not pursuant to 42 Pa. C.S.A. § 9714.  The trial court stated:

> [The petitioner]...attempts to extricate his [PCRA] petition under 42 Pa. C.S.A. § 9545(b), citing a change in constitutional law.  It is true that [our] Supreme Court invalidated 42 Pa. C.S.A. § 9714(a)(1)...
>
> ...It is also true [the petitioner] alleges that he was sentenced under the stricken provisions.  The record, however, belies the assertion.  Although [the petitioner] received a

22

> minimum sentence of ten years for two felonies, he was not
> sentenced under Two Strikes provisions.   The record clearly
> shows that sentences were based on a plea agreement and no
> presumption was applied that he was a high risk offender.   It is
> true that [the petitioner] was notified of Third Strike provisions, but
> that matter was for future criminal proceedings...

(Doc. No. 43, Attachment, "Statement Pursuant to Pa. R. App. P. 1925,"

dated December 4, 2001.)   Furthermore, even if the petitioner had been

sentenced pursuant to section 9714, the United States Supreme Court has

held that a sentencing scheme in which a judge, and not a jury, uses a prior

conviction to enhance a sentence for a subsequent offense, is not

unconstitutional. Almendarez-Torres v. United States, 523 U.S. 584 (2002).

The court also notes that 42 Pa. C.S.A. § 9545(2) provides that any petition

invoking an exception provided by that section shall be filed within 60 days

of the date the claim could have been presented.   The Supreme Court

handed down the Butler decision in 2000.   The petitioner did not present this

claim until September 13, 2001, when he filed the Second PCRA petition,

which was well beyond the 60 days time limit.

Therefore, based on the record before the court, the petitioner has not

established that his claims have been exhausted in the state courts.   Neither

has he put forth any facts which could excuse the procedural default of his

claims. Finally, a review of the merits reveals that the petitioner is not entitled

to relief.   As a result, the petition should be denied.

## III.   __RECOMMENDATION__

On the basis of the foregoing, it is recommended that the Petition for Habeas Corpus (Doc. No. 1) be **DENIED.**


s/ Malachy E. Mannion

**MALACHY E. MANNION**
United States Magistrate Judge

Dated: October 8, 2004
O:\shared\REPORTS\2003 Reports\03-0128.wpd

24